**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| SNAP FITNESS, INC., | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SCENIC CITY FITNESS, INC., GARY | ) | **COMPLAINT** |
| BLANKENSHIP, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

_____

Plaintiff Snap Fitness, Inc. ("Snap Fitness") for its Complaint against Defendants Gary Blankenship, Jr ("Blankenship") and Scenic City Fitness, Inc. ("Scenic City Fitness") (Scenic City Fitness and Blankenship may be referred to as "Defendants"), alleges as follows:

1.     This is an action seeking immediate, preliminary, and permanent injunctive relief enforcing Defendants' covenants not to compete and other obligations in the Franchise Agreement between the parties, and enjoining Defendants' trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq.*

2.     Snap Fitness is the franchisor of 24-hour fitness centers, using the registered trademark Snap Fitness®, as well as other proprietary technology, products, training, and standards and specifications for operation of franchised businesses (collectively, the "Snap Fitness System").

1

3.     Defendant Gary Blankenship is a former Snap Fitness franchisee, pursuant to a Franchise Agreement, together with all addendums and exhibits attached thereto, dated October 4, 2016. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit A**.

4.     Defendant Scenic City Fitness, Inc. is a company that is, on information and belief, wholly owned by Gary Blakenship, Jr. and is a party to the Franchise Agreement through an assignment.[1] A copy of the Assignment and Consent Agreement is attached as Exhibit B.

5.     Snap Fitness has learned that Defendants are competing with Snap Fitness, diverting Club members, and using and misusing without authorization the Snap Fitness® Marks and Confidential Information. Defendants are operating a competing business called Scenic City Fitness 24/7 from the same location, serving the same customers, and providing the same services. As Defendants put it in a recent announcement to Club members and the public, they are are "de-branding from Snap Fitness and transferring over to our own independent gym Scenic City Fitness 24/7. . . . You're not going to see any changes. It's going to be same billing. It's going to be the same gym. It's going to have the same great amenities and it's going to be 24/7, just like everybody likes." Snap Fitness, therefore, seeks: (a) a preliminary and permanent injunction prohibiting Defendants and those acting in concert and participation with them from operating a competing fitness business in violation of the noncompete and nonsolicitation provisions of the Franchise Agreement; (b) a preliminary and permanent injunction enjoining Defendants' trademark infringement and unfair competition; (c) a declaration that Snap Fitness properly and legally terminated the Franchise Agreement due to Defendants' breaches of the Franchise Agreement; and (d) an award of attorney's fees and costs as provided for in the Franchise Agreement.

---

[1] On information and belief, Gary Blankenship, Sr. is deceased and Gary Blankenship, Jr. is the sole owner of interests in the Franchise Agreement either directly or through his entity, Scenic City Fitness, Inc.

## PARTIES

6.     Snap Fitness, Inc. is a corporation organized under the laws of the state of Minnesota with its principal place of business located at 2411 Galpin Court #110, Chanhassen, Minnesota.

7.     Defendant Gary Blankenship, Jr. is a natural person who resides at 8530 Hixson Pike, Suite 114, Hixson, TN 37343.

8.     Scenic City Fitness, Inc. is a corporation organized under the laws of the state of Tennessee with its principal place of business located at 157 Pleasant Hill Road, Humbolt, Tennessee.

## JURISDICTION

9.      This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, as well as 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. The action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.

10.    This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11.    This Court has jurisdiction over Defendants because they irrevocably submitted to jurisdiction in the Franchise Agreement from which this dispute arises, agreeing that "[a]ny cause of action, claim, suit or demand allegedly arising from or related to the terms of this Agreement or the relationship of the parties that is not subject to arbitration under Section 12, must be brought in the Federal District Court for the District of Minnesota or in Hennepin County District Court,

Fourth Judicial District, Minneapolis, Minnesota. Both parties irrevocably submit themselves to, and consent to, the jurisdiction of said courts." Franchise Agreement § 15.I.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this District. In addition, the Defendants entered into contracts by which they agreed to venue here. Under Section 15.1 of the Franchise Agreement, Defendants agreed to submit to the venue of this Court. Additionally, pursuant to a Personal Guarantee, Defendant Gary Blankenship, Jr. agreed to be personally bound by any provisions of the Franchise Agreement relating to choice of forum and venue.

**FACTS**

**A.  The Snap Fitness Franchise System and Trademarks**

13.     Snap Fitness has developed a proprietary system—the Snap Fitness System—for the establishment of a series of standards, specifications, marketing, training, and operations for the successful management of 24-hour fitness centers. Through the execution of franchise agreements, Snap Fitness authorizes others to use the Snap Fitness System, including, but not limited to, proprietary information, knowledge and know-how, systems and procedures, personnel policies, information about Club members and customers ("Membership Information"), specifications for fitness equipment and facilities, marketing, accounting, and bookkeeping ("Confidential Information"). There are more than 500 Snap Fitness club locations located throughout the United States.

14.     In addition, Snap Fitness authorizes franchisees to use its trade name and trademarks (the "Marks"), and to benefit from the goodwill associated with such Marks, including the federally registered Snap Fitness Mark Nos. 3084847, 3107672, 3391628, 90858367,

4

90858365. The Marks have been used continuously in the United States and have been registered since as early as 2006 to identify the Snap Fitness brand and System and the products and services associated with that system in interstate commerce. The Marks have been widely advertised and promoted by Snap Fitness over a period of years. As a result of extensive advertising and promotion of the products and services associated with the Marks, the public has come to know and recognize the Marks and to associate them exclusively with the products and services offered by Snap Fitness System franchisees.

**B.  Key Terms of the Franchise Agreement and Personal Guarantee Agreement**

15.     Pursuant to the Franchise Agreement, Defendants agreed to operate, for a period of ten years, commencing on October 4, 2016, a Snap Fitness franchise using the Marks and Confidential Information from a single site in Hixson, Tennessee.

16.     Pursuant to Section 6.H and 10.D of the Franchise Agreement, Defendants acknowledged that as participants in the Snap Fitness System, they would "receive training and Confidential Information that you otherwise would not receive or have access to but for the rights licensed to you under this Agreement" and that "'Confidential Information' means and includes, without limitation, all member information and information concerning prospective and former members (collectively, 'Member Information'), and all proprietary information contained in the Manual or otherwise communicated to you in writing, verbally or through the internet or other online or computer communications, and any other knowledge or know-how concerning the methods of operation of the Club." Franchise Agreement §§ 6.H and 10.D.

17.     Defendants agreed that they would not compete during or after the term of the Franchise Agreement.

18.     Specifically, pursuant to Section 10.D.2 of the Franchise Agreement, Defendants agreed that during the term of the Agreement that they:

> must not directly or indirectly, for themselves or through, on behalf of or in conjunction with any individual or business entity: *(i)* divert any Club member, potential Club member or former Club member to any fitness club except another SNAP FITNESS® Club; or *(ii)* own, operate, lease, franchise, engage in, be connected with, have any interest in, or assist any person or entity engaged in any other fitness club (including, but not limited to a 24/7 fitness club, studio or exercise facility; a fitness club, studio or exercise facility featuring keycard access or a structured fitness/training program or complete body overhaul program for individuals) in the United States, except another SNAP FITNESS® Club pursuant to a valid franchise agreement with us.

Franchise Agreement § 10.D.2.

19.     They agreed that for a period of two years after termination of the Franchise Agreement, they would:

> not directly or indirectly, for themselves or through, on behalf of or in conjunction with any individual or business entity: *(i)* divert any Club member, potential Club member or former Club member to any fitness club except another SNAP FITNESS® Club; or *(ii)* own, operate, lease, franchise, engage in, be connected with, have any interest in, or assist any person or entity engaged in any other fitness club (including, but not limited to a 24/7 fitness club, studio or exercise facility; a fitness club, studio or exercise facility featuring keycard access or a structured fitness/training program or complete body overhaul program for individuals) that is located at or within a 10-mile radius of the Authorized Location, that is located within a 10-mile radius of any other SNAP FITNESS® Club in operation or under construction, or that is located in the Designated Area of any other SNAP FITNESS® franchisee.

Franchise Agreement § 10.D.3.

20.     They further agreed that the prohibitions identified in Section 10.D were "reasonable and necessary to protect us and the System (including other franchisees of the System)" and that the "time period and scope of the prohibitions are the reasonable and necessary time and distance needed to protect is if this Agreement expires or is terminated for any reason."

Franchise Agreement § 10.D.4.

21.     Defendants also agreed that they have "many other opportunities available to earn a living, and that these restrictions will not preclude you from engaging in a lawful trade or business for which you otherwise are qualified." Franchise Agreement § 10.D.4.

22.     Defendants also agreed that in the event of the actual or threatened breach of Section 10.D by Defendants, Snap Fitness would suffer "immediate and irreparable injury . . . for which there is no adequate remedy at law" and that Defendants "therefore agree that in the case of an alleged breach or violation of this Section, [Snap Fitness] may seek injunctive relief, in addition to all other remedies that may be available to us at equity or law." Franchise Agreement § 10.D.4.

23.     Defendants also agreed that the two-year limitation period would be "tolled during any period of noncompliance." Franchise Agreement § 10.D.3.

24.     Defendants also agreed that Snap Fitness has the right to terminate the Agreement immediately, upon notice, without an opportunity to cure, in the event of their "voluntary abandonment of this Agreement or the Authorized Location." Franchise Agreement § 13.B.2.

25.     Defendants also agreed that Snap Fitness has the right to terminate the Agreement with a limited opportunity to cure "[i]n the event that a default under this Agreement occurs that materially impairs the goodwill associated with any of the Marks." Franchise Agreement § 13.B.2.

26.     Section 3.B of the Franchise Agreement establishes that "You may not use, or permit the use of, any trademarks, trade names or service marks in connection with the Club except those listed in Attachment A or except as we otherwise direct in writing." Franchise Agreement § 3.B.

27.     In the event of termination, Defendants agreed that they "must . . . cease all use and display of the Marks and of any proprietary material (including the Manual) and of all or any portion of promotional materials furnished or approved by us, assign all right, title and interest in

the telephone numbers for the Club and cancel or assign, at our option, any assumed name rights or equivalent registrations filed with authorities." Franchise Agreement § 14.A.

28.     Defendants also agreed that upon termination, Snap Fitness has express rights to assume key operations and processes and properties, including that it:

> will have the option (but not the obligation) to do any or all of the following: *(i)* assume your Lease for the Club premises; *(ii)* assume all telephone numbers used in connection with the operation of the Club; *(iii)* assume all utilities used in connection with the operation of the Club; *(iv)* assume your rights and interest in and to any Membership Contract to which you are a party, by delivering to you written notice of our election within 30 days after termination or expiration of this Agreement; and/or *(v)* assume all social media accounts associated with the Club.

Franchise Agreement § 14.B.

29.     The Franchise Agreement also requires Defendants to pay attorneys' fees, establishing that "[s]hould your non-compliance with the Franchise Agreement cause us to incur attorneys' fees and/or costs, you will be required to reimburse us for the attorneys' fees and costs incurred." Franchise Agreement § 9.K.

30.     Pursuant to Section 14.A of the Franchise Agreement, Defendants agreed to:

a.     Cease use of the Marks

b.     Return all proprietary materials;

c.     Reimburse members for pre-paid services not rendered;

d.     Refrain from competing with Snap Fitness for a period of two years.

31.     In the event of termination, Snap Fitness also has the right to:

a.      Assume the Lease for the Club premises;

b.     Assume all telephone numbers used in connection with the Club;

c.     Assume all utilities used in connection with the operation of the Club;

d.  Assume rights and interests in and to any Membership Contract[2] to which Franchise was a party;

e.  Assume all social media accounts associated with the Club.

Franchise Agreement § 14.B.

32.  In conjunction with the Franchise Agreement, Defendants also executed a Personal Guarantee, pursuant to which he agreed that, among other things, he would be:

> personally bound by each and every condition and term contained in the Franchise Agreement, including but not limited to the non-compete provisions in paragraph 10.D, and agree that this Personal Guarantee will be construed as though the undersigned and each of them executed a Franchise Agreement containing the identical terms and conditions of this Franchise Agreement

Attachment C to the Franchise Agreement.

33.  Defendants have a limited right to terminate the Franchise Agreement under which they must provide written notice of a "breach by us of a material provision of this Agreement" that "identifies the grounds for the breach" and permits an opportunity to cure that "in no event be less than 60 days after [Snap Fitness's] receipt of the written notice." Franchise Agreement § 13.C. In the event that franchisee satisfies these express requirements, "termination will be effective 90 days after" receipt of the written notice of breach and termination does not "release

---

[2] Franchisee separately executed a Membership Contract Assignment Agreement under which the parties agreed that:

> In the event of expiration or termination of the Franchise Agreement, and in order to secure continuity and stability of the operation of the Club, Franchisee hereby sells, assigns, transfers and conveys to the Snap Fitness all of its rights, title and interest in and to all Membership Contracts; provided, however, such Assignment will not be effective unless and until the Franchise Agreement has expired or is terminated in accordance with the provisions thereof and Snap Fitness has delivered to Franchisee written notice of its acceptance of the assignment.

*See* Attachment G to the Franchise Agreement.

or modify [franchisee's or guarantor's] post-term obligations under Section 10.D and Section 14"
of the agreement. *Id.*

### C. Defendants Abandon Their Snap Fitness Franchised Business and Start a New Competing Business Under the Name "Scenic City Fitness 24/7"

34.    In recent years, Defendants have repeatedly defaulted on the obligations in the
Franchise Agreement and only barely avoided termination. In July 2022, Snap Fitness sent two
Notices of Default, one for breach of payment obligations and the other for failure to use
contractually-required franchise club management software. Around the same time, Defendants
also threatened to rebrand and operate a competing business and faced termination of the
agreement. In response to a Cease and Desist Letter and other communications from Snap Fitness,
Defendants ultimately stood down and ceased their competitive activities, avoiding termination
and returning to operation of the Snap Fitness franchised business.

35.    In recent weeks, Defendants have rekindled their effort to compete. But this time is
different, as they have rebuked Snap Fitness's demands to Cease and Desist, and have publicly
and brazenly announced their unambiguous intentions to abandon their franchised business and
compete, necessitating the Court's intervention and emergency injunctive relief to avoid
irreparable harm and other injuries.

36.    Defendants most recent plans to compete began to surface when, on June 21, 2024,
they sent to Snap Fitness an email with the subject line "Notice of Termination" and an attached
"formal notice of Termination of the Franchise Agreement." The purported notice of termination
was styled, instead, as a "Termination Agreement" dated October 4, 2016, executed only by Gary
Blankenship II and no other parties (and not Snap Fitness or any representative thereof).

37.    Defendants did not identify a breach in their notice, as required under Section 13.C
of the Franchise Agreement, other than to allege that they were owed $9,188.99.

38.     On June 24, 2024, Snap Fitness responded with an email communicating that certain amounts were being offset due to Defendants' failure to pay certain franchise fees and Defendants' failure to provide updated billing information and that, in any event, Snap Fitness paid $6,400.64 (the actual amount owed) to Defendants on June 23, 2024, resolving the issue that Defendants raised by their June 21, 2024 communication. To the extent that Defendants asserted a breach, which Snap Fitness disputes, it was cured.

39.     Nevertheless, around the same time, Defendants began to announce their intentions to compete with Snap Fitness.

40.     In a Facebook post dated June 26, 2024, Defendants published a video on their Snap Fitness club Facebook page, entitled "Update from Our Owner Gary Blankenship," in which Mr. Blankenship announces, in front of a Scenic City Fitness 24/7 logo:

> Hey Snap Fitness Hixson, Scenic City Fitness 24/7 . . . over the next 30 days we're going to be de-branding from Snap Fitness and transferring over to our own independent gym Scenic City Fitness 24/7. What does that mean for you guys? You're not going to see any changes. It's going to be same billing. It's going to be the same gym. It's going to have the same great amenities and it's going to be 24/7, just like everybody likes.

A copy of this video is or was available at:

https://www.facebook.com/SnapFitnessTN/videos/here-is-an-update-from-our-owner-gary-blankenship/446481958162280/ (last visited July 19, 2024).

41.     In a separate video published on Facebook, dated June 29, 2024, Defendants stated that they were "doing everything that we can to make sure that every single member that has been with us at Snap Fitness Hixson will continue to be with us at Scenic City Fitness 24/7." A copy of this video is or was available at: https://www.facebook.com/SnapFitnessTN/videos/an-update-from-our-owner-on-our-insurance-members-and-how-they-will-continue-to-/2136487040059769 (last visited July 19, 2024).

42.     In a Facebook post dated July 6, 2024, Defendants confirmed that they had abandoned the franchise, characterizing their fitness business as "formally [*sic*] Snap Fitness Hixon . .  [and] now our own independent fitness center."

43.     Similar messages have been posted on other social media accounts owned and/or controlled by you, including on Instagram (at https://www.instagram.com/snapfitnesshixson/ ?hl=en) and TikTok, among other possible sites.

44.     Defendants have also started to advertise their competing business on the website: https://www.sceniccityfitness247.com/ (last visited July 16, 2024):





45.     Defendants have also posted numerous communications and images that infringe on Snap Fitness's Marks and that either have or are highly likely to cause customer confusion, including images that simultaneously use the name of Defendants' competing business alongside images of the Snap Fitness name and Marks:



46.     Defendants have also updated their Google Business page to reflect that Snap Fitness Hixon is, instead, Scenic City Fitness 24/7.

47.     Defendants have posted on Facebook and other websites branded images showing the name and logo of the competing business breaking through an image of the Snap Fitness name and Marks, reflecting an unambiguous intent to infringe on, tarnish, and dilute Snap Fitness's Marks:



48.     Defendant Gary Blankenship has personally appeared in front of these infringing materials in brazen violation of his contractual obligations and of Snap Fitness's rights under the Lanham Act:



49.     On July 3, 2024, in response to discovering Defendants' intentions to abandon and compete and their unauthorized use of the Marks, Snap Fitness sent a cease and desist letter instructing Defendants to refrain from their competitive conduct and unauthorized uses of the Snap Fitness's Marks. A copy of the letter is attached as Exhibit C.

50.     Defendants responded shortly thereafter with an email communication to counsel for Snap Fitness stating that "I will forward this to my attorney and their law group and we will not be ceasing anything as Liftbrands [*sic*] Violated the Franchisee Agreement and nullified its terms." This communication did not attempt to identify the alleged violations of the Franchise Agreement by Lift Brands (Snap Fitness's parent) or otherwise state the basis for its purported nullification (because there is none).

51.     On July 10, 2024, Snap Fitness sent one last communication—in an effort to reach an amicable resolution as the parties did previously when Defendants last threatened to compete—

that demanded that Defendants comply with their obligation to refrain from competing and misusing the Marks.

52.     Defendants refused and restated their intentions to abandon and compete, including in a letter dated July 12, 2024 in which they demanded that Snap Fitness facilitate a transfer of membership billing information from Snap Fitness's billing provider, GloFox to a third-party that Defendants have identified (GymMasters Software).

53.     On July 17, 2024, Snap Fitness sent Defendants, through counsel, a notice of default, notice of termination, and cease and desist (the "Notice of Termination"), noticing defaults for abandonment, unauthorized use of Confidential Information, in-term diversion of Club members, and for impairment of the goodwill associated with the Marks, and providing an opportunity to cure. A copy of the Notice of Termination is attached as Exhibit D.

54.     Defendants did not cure their default of abandonment or in any way convey that they intended to comply with their obligations under the Franchise Agreement. The termination thereby became effective on July 19, 2024.

55.     The Notice of Termination also demanded that Defendants immediately undertake and comply with all post-termination obligations in the Franchise Agreement, including, without limitation, the following:

      a.  Ensure all amounts related to the Club that are due to Snap Fitness, its affiliates and any sums owed to third parties that have been guaranteed by us or our affiliates are paid in full.

      b.  Comply with the post-term noncompete covenants and confidentiality requirements outlined in Sections 10.D and 6.H of the Franchise Agreement.

      c.  Cancel or assign all right, title and interest in the telephone numbers for the Club.

    d.   Cancel any assumed name rights or equivalent registrations filed with authorities.

    e.   Cease any and all use of the Marks.

Notice of Termination, at 3.

57.    Snap Fitness also reserved its rights under the Franchise Agreement to, among other things, assume the Lease for the Club, assume the rights and interest in and to any Membership Contract to which Defendants are a party, and assume the right to purchase assets used in connection with operation of the Club. Notice of Termination, at 3-4.

57.    Defendants have not ceased operating their competing business, continue their unauthorized use of Confidential Information, including Membership Information, continue their misuse of the Marks, and continue to fail to comply with their post-termination obligations in the Franchise Agreement.

## COUNT I
### BREACH OF FRANCHISE AGREEMENT AND PERSONAL GUARANTEE (FAILURE TO COMPLY WITH POST TERMINATION OBLIGATIONS)

58.    Snap Fitness realleges each of the previous allegations as if fully set forth herein.

59.    The Franchise Agreement and Personal Guarantee are lawful and binding contracts.

60.    Defendants have failed to comply with the post-termination obligations set forth in the Franchise Agreement, including by operating a competing business, and continuing to use Snap Fitness's Marks and Confidential Information. This conduct constitutes material breaches of the Franchise Agreement and Personal Guarantee.

61.    Snap Fitness has no adequate remedy at law to protect its substantial business and property rights at issue in this lawsuit. The damages from Defendants' failure to comply with the post-termination obligations in the Franchise Agreement are considerable and continuing and thus not capable of ascertainment at this time.

62.     Snap Fitness is entitled to preliminary and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreement, preventing Defendants from using the Snap Fitness's Marks and Confidential Information, and preventing Defendants from operating a competing business in violation of the post-termination non-compete provisions.

63.     As a direct and proximate result of Defendants' actions, Snap Fitness has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages, for breaches of the post-termination obligations, in an amount to be proven at trial, plus costs, disbursements, interests, and attorneys' fees, which in any case exceeds $75,000.

**<u>COUNT II</u>**
**BREACH OF FRANCHISE AGREEMENT AND PERSONAL GUARANTEE (FAILURE TO COMPLY IN-TERM RESTRICTIVE COVENANTS)**

64.     Snap Fitness realleges each of the previous allegations as if fully set forth herein.

65.     The Franchise Agreement and Personal Guarantee each contain or incorporate an agreement to not compete with Snap Fitness and not solicit customers of Snap Fitness during the term of the Franchise Agreement, and, for a period of two years after the termination of the Franchise Agreement, within certain geographic areas.

66.     Defendants violated the covenant not to compete by rebranding as and operating or preparing to operate Scenic City Fitness 24/7, a Competitor of Snap Fitness and franchisees of the Snap Fitness System. Defendants' competing business provides the same services, from the same location, to the same current and prospective customers as Defendants' Snap Fitness franchised business.

67.     Additionally, Defendants have continued to solicit customers of Snap Fitness, despite agreeing not to do so.

68.     As a direct and proximate result of Defendants' actions, Snap Fitness has suffered irreparable injury and has incurred monetary damages for breaches of the covenants not to compete in an amount to be proven at trial, plus costs, disbursements, interests, and attorneys' fees, which in any case exceeds $75,000.

## COUNT III
## DECLARATORY JUDGMENT

69.     Snap Fitness realleges each of the previous allegations as if fully set forth herein.

70.     The Franchise Agreement provides a basis for termination by Snap Fitness under specific conditions, including abandonment of the franchise operated under the Franchise Agreement.

71.     Termination for the above-listed reasons can be completed upon notice to Defendants.

72.     Defendants abandoned Snap Fitness franchisee under the Franchise Agreement.

73.     Snap Fitness provided Defendants notice of the termination of the Franchise Agreement on July 17, 2024.

74.     The Franchise Agreement terminated by July 19, 2024, after Defendants failed to cure their abandonment default.

## COUNT IV
## TRADEMARK INFRINGEMENT

75.     Snap Fitness realleges each of the previous allegations as if fully set forth herein.

76.     Snap Fitness has registered certain of its Marks with the United States Patent and Trademark Office.

77.     Since registering its Marks, Snap Fitness has extensively advertised its Marks in connection with its products and services.

78.     Defendants do not have any rights to the use of any Marks of Snap Fitness except in connection with activities authorized by the Franchise Agreement.

79.     Notwithstanding demands by Snap Fitness that Defendants cease their use of the Marks, Defendants continue to unlawfully use and display the Snap Fitness Marks in association with the operation of their competing business, Scenic City Fitness 24/7.

80.     Defendants' unauthorized use and display of Snap Fitness's Marks constitutes willful and intentional infringement of the Marks in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

81.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

82.     Defendants' use in commerce of the Snap Fitness Marks without the consent of Snap Fitness is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by or associated with Snap Fitness.

83.     Snap Fitness has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined, but in any case exceeds $75,000.

84.     Snap Fitness has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

85.     Snap Fitness is entitled to preliminary and permanent injunctive relief preventing Defendants from further infringement of the Snap Fitness Marks, plus costs, disbursements, interest and attorneys' fees.

## <u>COUNT V</u>
## UNFAIR COMPETITION

86.     Snap Fitness realleges each of the previous allegations as if fully set forth herein.

87.     Defendants have infringed Snap Fitness's rights by using and displaying its Mark.

88.     Due to Defendants' infringement and conduct, customers are likely to be confused and induced into patronizing Defendants' competing business in the belief that the goods and services are affiliated, connected, or associated with Snap Fitness businesses. Customers have been or are likely to be confused as to the sponsorship of the products and services sold by Defendants while they continue to hold themselves out in a manner similar to that of a franchisee of the Snap Fitness System.

89.     Defendants' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a) and common law.

90.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

91.     Snap Fitness has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined but in any case exceeds $75,000.

92.     Snap Fitness has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

93.     Snap Fitness is entitled to preliminary and permanent injunctive relief preventing Defendants' unfair competition, plus costs, disbursements, interest and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Snap Fitness, Inc., respectfully requests the following relief:**

A. An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease operating a competing business in violation of the Franchise Agreement;

B. An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately comply with the post-termination obligations set forth in the Franchise Agreement, including but not limited to the provisions of Section 3.B of the Franchise Agreement, which prohibits use of the Marks, except in conformance with the purpose of the Franchise Agreement, and to cease using Snap Fitness's Confidential Information;

C. An order for a preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease engaging in unfair competition with Snap Fitness;

D. An order declaring Defendants breached the Franchise Agreement and the Franchise Agreement was properly terminated by Snap Fitness;

E. An award against Defendants, jointly and severally, for the damages Snap Fitness has sustained and the profits Defendants have derived as a result of their violations of the Franchise Agreement and Personal Guarantee Agreement;

F. An award against Defendants, jointly and severally, for the damages Snap Fitness has sustained and the profits Defendants have derived as a result of their violations of the Lanham Act, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117;

G.  An award against Defendants for treble damages and prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

H.  An award against Defendants, jointly and severally, for Snap Fitness's reasonable costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the Franchise Agreement; and

I.  Such other and further relief as the Court deems just and proper.

Dated:  July 19, 2024                    **LATHROP GPM LLP**

                                          */s/ David Archer*
                                          David C. Archer (MN #0399150)
                                          Brooke F. Robbins (MN # 0401904)
                                          3100 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN 55402
                                          Telephone: (612) 632-3304
                                          Facsimile: (612) 632-407
                                          David.Archer@lathropgpm.com
                                          Brooke.Robbins@lathropgpm.com

                                          **ATTORNEYS FOR SNAP FITNESS, INC.**